

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

THEODIS DODSON, §
　　　　　　　　　　　　　　§
　　　　Petitioner, §
　　　　　　　　　　　　　　§
v. § No. 4:10-CV-673-A
　　　　　　　　　　　　　　§ (Consolidated with
RICK THALER, Director, § No. 4:10-CV-674-A)
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
　　　　　　　　　　　　　　§
　　　　Respondent. §

## MEMORANDUM OPINION
### and
### ORDER

This action involves consolidated petitions for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Theodis Dodson, a state prisoner currently incarcerated in Kenedy, Texas, against Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petitions should be denied.

### I. Factual and Procedural History

On March 4, 2008, pursuant to a plea bargain agreement, petitioner pleaded guilty to aggravated robbery with a deadly weapon in exchange for a life sentence in cause number 1071695D

and pleaded guilty to capital murder in exchange for a life sentence without parole in cause number 1072134C in the Criminal District Court Number One of Tarrant County, Texas. (10State Habeas R., vol. 2, at 99; 11 State Habeas R., vol. 2, at 114) Petitioner's appeals were dismissed and rehearing denied by the Second District Court of Appeals of Texas. *Dodson v. State*, Nos. 02-08-081-CR and 02-08-082-CR, slip copy, (Tex. App.-For Worth Dec. 18, 2008 ) (not designated for publication). Petitioner also filed postconviction state habeas applications challenging his convictions, to no avail. These federal petitions followed. Two petitions were filed the same day, September 10, 2010. One was docketed as No. 4:10-CV-673-A and the other as No. 4:10-CV-674-Y. Both complain of petitioner's capital murder conviction and sentence; and, the two petitions appear to be worded basically the same. No. 4:10-CV-674-Y was reassigned and the number was changed to 4:10-CV-674-A. Then, the two actions were consolidated, and the number of the consolidated action was ordered to be shown in all future filings and on the clerk's records as "No. 4:10-CV-673-A (Consolidated with No. 4:10-CV-674-

A)." This memorandum opinion and order pertains to both petitions, as consolidated.[1]

## II. Issues

Petitioner's claims are construed as follows:

(1) He was denied fundamental fairness during the trial court proceedings because the trial court and "other officials" neglected their duty to inquire whether he was competent to follow the proceedings.

(2) His guilty pleas were not knowingly and voluntarily entered due to mental illness.

(3) He was denied effective assistance of trial counsel.

(4) His right to due process was denied by the trial court's failure to *sua sponte* conduct a competency hearing.

(Pet. at 7-8A)

## III. Rule 5 Statement

Respondent believes that the petitions are neither barred by limitations nor subject to the successive petition bar and that petitioner has exhausted his state remedies as to the claims presented as required by 28 U.S.C. § 2254(b). (Resp't Answer at 3)

---

[1]In the order of consolidation the court signed November 18, 2010, the court indicated a belief that the two petitions challenged different convictions. A further review of the petitions causes the court to believe otherwise.

3

## IV. Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, as here, it is an adjudication on the merits, which is entitled to this presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997.)

## V. Discussion

Petitioner claims that his trial was fundamentally unfair because the trial court and "other officials" neglected to inquire into his mental competency to stand trial, the trial court did not *sua sponte* conduct a competency hearing, and his guilty pleas were not entered knowingly and voluntarily due to his mental illness. Petitioner further claims that his trial counsel was ineffective by failing to fully investigate his mental health and whether he was competent to stand trial, consider an insanity defense, request a competency hearing,

introduce his "psych medical records" into evidence, and inform him that Texas does not execute "mentally ill or mentally retarded offenders," thereby rendering his pleas involuntary. (Pet. at 7-7C & 8-8A)

The conviction of a legally incompetent defendant violates constitutional due process. *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Mata v. Johnson*, 210 F.3d 324, 329 (5th Cir. 2000). The standard for competency to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960); *Bouchillon v. Collins*, 907 F.2d 589, 592 (5th Cir. 1990). The competency standard in guilty plea cases is identical to the competency standard to stand trial. *Godinez v. Moran*, 509 U.S. 389, 398-99 (1993).

State procedures must be adequate to insure the right to be tried while competent. *Pate*, 383 U.S. at 378. A court must *sua sponte* conduct an inquiry into a defendant's mental capacity if the evidence raises a bona fide doubt as to the defendant's competency at that time. *Id.; Drope v. Missouri*, 420 U.S. 162, 180 (1975). In determining whether there is a "bona fide doubt"

6

as to the defendant's competence, the court considers: (1) any history of irrational behavior, (2) the defendant's demeanor at trial, and (3) any prior medical opinion on competency. *Drope*, 420 U.S. at 180. The test is an objective one. *Pedrero v. Wainright*, 590 F.2d 1383, 1388 (5th Cir. 1979). If the trial court receives evidence, viewed objectively, that should have raised a reasonable doubt as to competency, yet failed to make further inquiry, the defendant has been denied a fair trial. *Id*.

In a federal habeas corpus proceeding stemming from a state court conviction, deference must be given to a state court's decision on the need for a competency hearing. *See Dowthitt v. Johnson*, 230 F.3d 733, 745 (5th Cir. 2000); *United States v. Williams*, 819 F.2d 605, 607 (5th Cir. 1987) (noting that the Supreme Court had reversed a decision of the Fifth Circuit which did not grant sufficient deference to a state court decision in *Maggio v. Fulford*, 462 U.S. 111 (1983)). The burden is on the petitioner to prove by a preponderance of the evidence that he was incompetent. *Bouchillon*, 907 F.2d at 592.

In this case, petitioner's trial counsel, Robert Ford, requested Drs. Kelly R. Goodness and Michael D. Chafetz to conduct psychological evaluations of petitioner in preparation of the mitigation phase of trial. (11State Habeas R., vol.1, at

7

111-12) The evaluations reflect that petitioner suffers from schizophrenia and certain mood disorders. (11State Habeas R., vol. 1, at 18-42) Petitioner, in the state habeas proceedings, and now, relies on those psychological evaluations in support of his argument that he was mentally incompetent to stand trial. Petitioner also presents evidence that since his incarceration he has sought mental health services and taken medication for his mental illness and the affidavit of Lisa Geiger, his wife of ten years, providing, in relevant part:

> I was married to the Petitioner for ten years and I described [sic] many psychotic episodes throughout our marriage. One episode I noticed was the Petitioner Theodis Dodson would always wear an extra pair of pants. When I asked him why he did this, he told me that a family member had raped him and he felt safe by doing this.
>
> On many occasions he spoke of Demons trying to kill him and that Satan was after him. These episodes often lead [sic] to bouts of screaming and thrashing around[.] [A]fterward he would cry uncontrollably.
>
> Yet there were other episodes where he would mention that he would hear voices that would tell him to do things and after he would do them he would not remember what he had done. Many times he would get very angry with himself and cause bodily harm to himself. During dinner he became very enraged for no apparent reason and subsequently stabbed himself in the leg. These are only a few episodes I (Lisa Geiger)

8

> have witnesses [sic] throughout the course of our
> marriage.

(*Id.* at 44-63)

In response to petitioner's claims, his trial counsel testified by affidavit as follows:

> Dr. Kelly Goodness was appointed by the trial court to assist me in preparing a mitigation defense for the punishment phase of Mr. Dodson's trial. . . . Dr. Goodness made an initial finding that Mr. Dodson was competent and her opinion never varied during her work on this case. Dr. Goodness and I have worked on numerous capital murder death penalty cases and the first assessment she makes in each and every case is whether our client is competent. Mr. Dodson's assertion that his psychological disorders rendered his plea involuntary are ludicrous. Dodson attached the reports of Goodness and Chafetz. Neither report supports any contention that Dodson's psychological problems could or did produce an involuntary plea.
>
> Most importantly, Dodson has attempted to fuse mitigation evidence and competency when no competency issues exists [sic]. In other words, Dodson claims his plea[s] w[ere] involuntary when in fact every psychological assessment demonstrates that he was competent and not impeded in any fashion into entering a voluntary plea. Please note that [in] . . . Dodson's writ he claims that no one ever inquired whether he was competent. Dodson's claim is an outright misrepresentation of the facts. Again, no report or jail record ever gives the indication that Dodson was incompetent. . . . Theodis Dodson voluntarily entered his guilty plea[s] and no evidence indicates otherwise.
>
> Mr. Dodson claims that he was pressured into signing the plea[s] based on my statements that a jury was going to kill him. I repeatedly told Mr. Dodson that the outcome to his trial could result in the death penalty. The only other outcome was a capital life

9

sentence. I did tell Dodson that I wanted to save his life. Mr. Dodson's state of mind - he chose to accept a life sentence rather than face the death penalty because he was guilty.

I will address Dodson's assertion that we did not investigate the insanity defense. We told Dodson that our experts did not consider insanity a viable defense and therefore we made a joint decision not to pursue it. Neither psychological assessment ever supported the insanity defense. No record in Dodson's own writ suggests the issue of insanity was a viable defense in this case.

The mitigation work in this case represents one of the best pieces of mitigation work ever done by myself, Bill Ray, Dr. Goodness, and Dr. Chafetz. Testing, trips to Arkansas for extensive family interviews, record searches, and personal interviews with Dodson produced a comprehensive picture of Dodson. That is, in fact, the only reason he could fabricate the writ he has produced. However, Theodis Dodson voluntarily entered his guilty plea[s] and no evidence indicates otherwise.

(11State Habeas R., vol. 1, at 111-12)

Based on counsel's affidavit, petitioner's demeanor in court, the documentary evidence, and the record of the plea proceedings, the state habeas judge, who also presided over the plea proceedings, entered the following relevant findings of fact:

    6.    Applicant presents evidence to support his claim that he suffered from mental illness.

    7.    Applicant does not allege that he did not have the sufficient present ability to consult with his

10

attorney with a reasonable degree of rational understanding.

8. Applicant does not allege that he did not have a rational and factual understanding of the proceedings against him.

9. Applicant presents no evidence that he was not competent to stand trial.

10. Dr. Kelly Goodness was appointed to assess Applicant's mental health and prepare a mitigation defense.

11. A thorough mental health assessment was done of Applicant.

12. Dr. Goodness concluded that Applicant was competent.

13. There is no evidence that Applicant was incompetent to stand trial.

14. Applicant was admonished in accordance with article 26.13 of the Texas Code of Criminal Procedure.

15. Applicant acknowledged by his signature that he "fully underst[oo]d each of the . . . written plea admonishments given by the Court and [he] ha[d] no questions."

16. Applicant acknowledged by his signature that he was "aware of the consequences of [his] plea[s].

17. Applicant acknowledged by his signature that he was "mentally competent" and his plea[s] w[ere] "knowingly, freely, and voluntarily entered."

18. Applicant acknowledged by his signature that "[n]o one ha[d] threatened, coerced, forced, persuaded or promised [him] anything in exchange for [his] plea[s].

11

19. Applicant acknowledged by his signature that he was "totally satisfied with the representation given to [him] by [his] attorney."

20. Applicant acknowledged by his signature that his "attorney provided [him] fully effective and competent representation."

21. Hon. Ford acknowledged by his signature [in each case] that he had "fully reviewed and explained the . . . court admonishments, rights, and waivers, as well as the . . . judicial confession to [Applicant]."

22. Hon. Ford acknowledged by his signature [in each case] that he was "satisfied that [Applicant] [was] legally competent and ha[d] intelligently, knowingly, and voluntarily waived his rights and w[ould] enter . . . guilty plea[s] understanding the consequences thereof.

23. This Court acknowledged by its signature as follows:

    The Court has given [Applicant] the admonishments set out . . . [in the written plea admonishments]. In addition, the Court finds [Applicant] is mentally competent and that his plea[s] w[ere] intelligently, freely, and voluntarily entered.

24. Applicant's own evidence that counsel had had his mental health assessed is contrary to Applicant's claims that counsel refused to consider an insanity or other mental illness defense.

25. Hon. Ford advised Applicant that their experts did not consider insanity a viable defense.

26. Hon. Ford recalls that it was a joint decision between he and Applicant to not pursue the insanity defense.

19. Applicant acknowledged by his signature that he was "totally satisfied with the representation given to [him] by [his] attorney."

20. Applicant acknowledged by his signature that his "attorney provided [him] fully effective and competent representation."

21. Hon. Ford acknowledged by his signature [in each case] that he had "fully reviewed and explained the . . . court admonishments, rights, and waivers, as well as the . . . judicial confession to [Applicant]."

22. Hon. Ford acknowledged by his signature [in each case] that he was "satisfied that [Applicant] [was] legally competent and ha[d] intelligently, knowingly, and voluntarily waived his rights and w[ould] enter . . . guilty plea[s] understanding the consequences thereof.

23. This Court acknowledged by its signature as follows:

    The Court has given [Applicant] the admonishments set out . . . [in the written plea admonishments]. In addition, the Court finds [Applicant] is mentally competent and that his plea[s] w[ere] intelligently, freely, and voluntarily entered.

24. Applicant's own evidence that counsel had had his mental health assessed is contrary to Applicant's claims that counsel refused to consider an insanity or other mental illness defense.

25. Hon. Ford advised Applicant that their experts did not consider insanity a viable defense.

26. Hon. Ford recalls that it was a joint decision between he and Applicant to not pursue the insanity defense.

27. Applicant presents no evidence to support his claims that counsel took advantage of him.

28. Applicant presents no evidence to support his claim that he "pretended to read and understand" the paperwork.

29. Applicant presents no evidence to support his claim that he acted like he understood the verbal instructions and was just "going through the motions out of fear."

30. Hon. Ford properly advised Applicant that he was facing a possible death penalty.

31. Hon. Ford admits that . . . he did tell Applicant that he wanted to save his life.

32. Hon. Ford recalls that Applicant chose to accept the life sentence rather than face the death penalty because he was guilty.

33. Hon. Ford's affidavit is credible and supported by the record.

. . .

40. Applicant presents no evidence to support his claim that counsel failed to fully investigate Applicant's mental health profile.

41. Hon. Ford fully investigated the mitigation file and the reports of Dr. Goodness, Dr. Chafetz, and all interviews done.

42. Applicant presents no evidence to support his claim that counsel failed to investigate whether applicant was insane before or after the offense.

43. Hon. Ford discussed the insanity defense with Applicant and it was their joint decision . . . to not pursue the insanity defense based on the advice of their experts.

44. Dr. Goodness confirmed that Applicant was competent.

45. Applicant presents no evidence to support his claim that counsel failed to consider Applicant's mental illness defense.

46. Mitigation work was done on Applicant's behalf by Hon. Ford, Bill Ray, Dr. Goodness, and Dr. Chafetz.

47  Applicant presents no evidence to support his claim that there was evidence to support a competency hearing.

48. Applicant presents no authority to support his claim that counsel should have made Applicant's medical records part of the court's record when Applicant pled guilty.

49. Applicant presents no authority to support his claim that the State would not have executed him on the basis of his mental illness or disability.

50. Applicant presents no evidence, or authority, to support his claim that the trial court should have held a competency hearing *sua sponte*.

51. Applicant presents no evidence that there was any evidence presented to the trial court that Applicant was incompetent to stand trial.

(11State Habeas R., vol. 2, at 114-18) (citations omitted)

Under Texas law, "[a] person is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." TEX. CODE CRIM. PROC. art. 46B.003(b) (Vernon 2006). A person is incompetent to stand trial "if the person does not have: (1) sufficient present

ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person. *Id.* art. 46B.003(a). Applying this law to its factual findings, the habeas court reached the following conclusions of law:

4. Applicant has failed to prove that he did not have the sufficient present ability to consult with his attorney with a reasonable degree of rational understanding.

5. Applicant has failed to prove that he did not have the rational and factual understanding of the proceedings against him.

6. Applicant has failed to overcome the presumption that he was competent to stand trial.

. . .

8. There is a presumption of regularity with respect to guilty pleas under Texas Code of Criminal Procedure art. 1.15.

9. Before accepting a guilty plea, the court must admonish the defendant as to the consequences of his plea, including determining whether the plea is freely, voluntarily, and knowingly given.

10. Applicant was properly admonished.

11. Applicant has failed to prove that he was incompetent to plead guilty.

12. Applicant has failed to prove that his plea[s] w[ere] involuntary due to mental illness.

13. Applicant has failed to prove that his plea[s] w[ere] the result of coercion.

15

14. Applicant has failed to prove that his plea[s] w[ere] the result of threats.

15. Applicant has failed to overcome the presumption that his plea[s] w[ere] regular.

16. Applicant has failed to prove that his plea[s] w[ere] not freely, knowingly, or voluntarily given.

. . .

31. Applicant has failed to prove that counsel failed to fully investigate his mental health profile.

32. Applicant has failed to prove that counsel failed to investigate whether Applicant was insane before or after the offense.

33. Applicant has failed to prove that counsel failed to investigate whether Applicant was competent to plead guilty.

34. Applicant has failed to prove that counsel failed to consider Applicant's mental health as a defense.

35. Applicant has failed to prove that there was any evidence that he was incompetent to stand trial.

36. [Applying the familiar *Strickland* standard,] Applicant has failed to prove that counsel's representation was deficient for not requesting a competency hearing.

37. Applicant has failed to prove that his trial counsel's representation fell below an objective standard of reasonableness.

. . .

42. Applicant has failed to prove that a reasonable probability exists that the trial court would have granted a competency hearing had counsel requested one.

43. Applicant has failed to prove that a reasonable probability exists that Applicant would have been found not competent to stand trial had counsel requested a competency hearing.

44. Applicant has failed to prove that a reasonable probability exists that the outcome of the proceeding would have been different had counsel requested a competency hearing.

45. Applicant has failed to show that there is a reasonable probability that, but for the alleged acts of misconduct, the result of the proceeding would [have] been different.

46. Applicant has failed to prove that he received ineffective assistance of counsel.

. . .

49. Applicant has failed to prove that some evidence came to the trial court's attention suggesting that Applicant was incompetent to stand trial.

50. Applicant has failed to prove that the trial court had a duty to hold a competency hearing *sua sponte*.

51. Applicant has failed to prove that his due process rights were violated.

(11State Habeas R., vol. 2, at 118-23) (citations omitted) In turn, the Texas Court of Criminal Appeals also rejected petitioner's claims on the findings of the trial court.

Petitioner has failed to present convincing evidence or compelling argument to rebut the presumption of correctness of the state court's credibility determinations and factual

17

findings. Further, a state may presume that a defendant is competent and require him to prove incompetence by a preponderance of the evidence. *Medina v. California*, 505 U.S. 437, 449 (1992). Such a presumption does not offend petitioner's due process rights. *Id.* at 445.

Petitioner presents no evidence, viewed objectively, that should have raised a reasonable doubt as to his competency. Although he presents evidence that he suffers from schizophrenia and mood disorders, there is nothing whatsoever in the record indicating that he was incapable of consulting with trial counsel or did not understand the proceedings on the day of the plea proceedings. Based on petitioner's and his trial counsel's averments in the written admonishments and, based on petitioner's demeanor at the plea proceedings, the trial court apparently believed there was strong indicia of petitioner's competency. Petitioner has failed to demonstrate objective facts known to counsel or the trial court which would have signaled a bona fide doubt as to his competency. The allegations made by petitioner in his state habeas applications and these federal petitions are largely conclusory and do not overcome the presumption that he was competent to stand trial. Without substantiation in the record, a court cannot consider a habeas petitioner's mere

assertions on a critical issue in his pro se petition to be of probative evidentiary value. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

For the reasons discussed herein,

The court ORDERS petitioner's petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that all pending motions not previously ruled upon be, and are hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED March 1, 2011.

_____
JOHN McBRYDE
United States District Judge